_____
)
UNITED STATES OF AMERICA,    )
)
)
      v.      )      Criminal No. 15-161-08 (EGS)
)
CARLOS COOPER,    )
)
      Defendant.    )
_____)

## MEMORANDUM OPINION

Pending before the Court is the government's motion for a final order of forfeiture. Upon careful consideration of the government's motion, the opposition, reply, sur-reply, and sur-sur-reply thereto, the applicable law, the parties' arguments at the July 30, 2018 motion hearing, the entire record, and for the reasons stated below, the Court **DENIES** the government's motion for a final order of forfeiture.

## I.    Background

On March 8, 2017, defendant Carlos Cooper pleaded guilty to one count of conspiracy to distribute and possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), and 846. *See* Plea Agreement, ECF No. 175. As part of the plea agreement, Mr. Cooper agreed to forfeit "(1) the value of any property constituting, or derived from, any proceeds he obtained, directly or indirectly, as the

result of the violation to which he is pleading guilty; (2) any

. . . property used, or intended to be used, in any manner or

part, to commit, or to facilitate the commission of, such

violation; and (3) any substitute assets for property otherwise

subject to forfeiture" pursuant to 21 U.S.C. § 853. *Id.* at 8.

The parties were unable to reach an agreement regarding a

proposed final order of forfeiture and asked the Court to

resolve this issue prior to scheduling a sentencing hearing for

Mr. Cooper. *See* Joint Status Report, ECF No. 229 at 1.

The government seeks a forfeiture money judgment in the

amount of $46,432, which the government contends represents the

proceeds that Mr. Cooper "personally obtained" as a result of

his heroin sales to co-defendant Harry Jackson. Govt's Mem. in

Support of Final Order of Forfeiture ("Govt's Mot."), ECF No.

235 at 1. Mr. Cooper does not contest "that the government's

proffer established by a preponderance of evidence that 650

grams of heroin represents the quantity of heroin he distributed

to Mr. Jackson during the charged conspiracy." Def.'s Response,

ECF No. 238 at 2. However, he disagrees with the government's

assertion that he "personally obtained proceeds totaling

$46,432." *Id*. Rather, Mr. Cooper argues that the circumstantial

evidence demonstrates that he was a middle man: he discussed

with Mr. Jackson the latter's interest in obtaining heroin, he

told Mr. Jackson the price being charged by his supplier,[1] he

obtained money from Mr. Jackson to pay his supplier, and then

provided the drugs to Mr. Jackson. *Id*. Therefore, according to

Mr. Cooper, he did not "obtain" for himself the total amount

that Mr. Jackson paid for the heroin, but rather "at most" the

profit Mr. Cooper made on those transactions. *Id*. Since the

government did not provide direct or circumstantial evidence

about his profits, Mr. Cooper suggests that $5 per gram is a

reasonable estimate of his profit. *Id*.

The government relies on five heroin sales by Mr. Cooper to

support the amount it seeks in forfeiture. First, the government

states that the April 25, 2015 activations demonstrate that Mr.

"Cooper would obtain the 'buy money' from [Mr.] Jackson, pay the

supplier for the heroin, and then deliver the heroin to [Mr.]

Jackson." Govt's Mot., ECF No. 235 at 8. The government notes

that it "appears that [Mr.] Cooper and [Mr.] Jackson were

discussing [Mr.] Cooper trying to negotiate a lower price with

the supplier." *Id*. at 7. Second, the May 5-6, 2015 activations

demonstrate that Mr. "Cooper instructed [Mr.] Jackson to give

him as much money as he could, and that [Mr.] Cooper would front

[Mr.] Jackson the remaining heroin he was going to purchase."

---

[1] The record does not indicate whether Mr. Jackson had one or more suppliers; the Court will refer to "supplier."

*Id.* at 9. Later that day, Mr. Cooper "inform[ed] [Mr.] Jackson that he obtained over 400 grams of heroin and was arranging to pick it up and deliver it to [Mr.] Jackson." *Id*. The next day, Mr. Cooper informed Mr. Jackson that he had been charged $31,032 for 431 grams of heroin, for which Mr. Jackson owed $16,832 to Mr. Cooper. *Id*. Third, the June 1, 2015 activations demonstrate that Mr. "Cooper picked up money from [Mr.] Jackson and then obtained heroin from his supplier in an amount of at least 50 grams." *Id*. at 10-11. Fourth, the June 3, 2015 activations demonstrate that Mr. Cooper informed Mr. Jackson "that his suppliers had additional heroin available . . . and wanted to know whether [Mr.] Jackson wanted to purchase it," which he ultimately did. *Id*. at 11. Finally, the June 30, 2015 activation demonstrates that Mr. Jackson advised Mr. Cooper that he would purchase 50 grams of heroin. *Id*. at 12.

## II.  Applicable Law

Section 853(a)(1) of Title 21 of the United States Code provides that a person convicted of certain crimes, including the crimes to which Mr. Cooper has pleaded guilty, "shall forfeit to the United States . . . (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of [the] violation; (2) any of the person's property used, or intended to be used, in any

4

manner or part, to commit, or to facilitate the commission of, such violation . . . ." 21 U.S.C. § 853(a). Section 853(o) provides that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." 21 U.S.C. § 853(o).

"The government must prove its forfeiture allegations by a preponderance of the evidence." *United States v. DeFries*, 129 F.3d 1293, 1312-13 (D.C. Cir. 1997). "[T]he government may satisfy its burden of proof by direct or circumstantial evidence." *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007). Since forfeiture is part of sentencing, the Federal Rules of Evidence do not apply. *United States v. Smith*, 770 F.3d 628, 641 (7th Cir. 2014). Rather, in making the forfeiture determination, the Court may consider "evidence already in the record, including any written plea agreement, and . . . any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B).

## III. Analysis

Mr. Cooper makes two arguments in support of his position: (1) he did not "obtain" the "proceeds" the government seeks in the forfeiture order; and (2) per the rule of lenity, "proceeds"

should be defined as "net proceeds."[2] Def.'s Response, ECF No. 238 at 3-8.

In support of his first argument, Mr. Cooper relies on *Honeycutt v. United States,* 137 S. Ct. 1626 (2017). In *Honeycutt*, the Supreme Court resolved a disagreement among the United States Courts of Appeals regarding whether co-conspirators could be jointly and severally liable in forfeiture for any proceeds from the conspiracy pursuant to section 853. 137 S. Ct. at 1629. In that case, two brothers, one of whom was the owner and the other the sales and inventory manager of a hardware store, were indicted for various federal crimes relating to their sale of iodine while knowing that it would be used to manufacture methamphetamine. *Id*. at 1630. The government sought forfeiture against each brother of the total profits from the sale of the iodine on the theory that, as co-conspirators, they were jointly and severally liable for any proceeds from the conspiracy. *Id*. at 1630-31. The Supreme Court held joint and

---

[2] Because the Court concludes that the government has not met its burden of proving by a preponderance of the evidence that Mr. Cooper "obtained" the amount it seeks in forfeiture, the Court does not address whether the term "proceeds" means gross proceeds or net profits.

several liability to be inconsistent with the text and structure

of the statute. *Id*. at 1626.[3]

To illustrate its analysis, the Court provided the

following example of joint and several liability in the context

of criminal forfeiture: A farmer masterminds a scheme to grow,

harvest, and distribute marijuana on local college campuses. *Id*.

at 1631. He recruits a local college student to deliver packages

and pays the student $300 per month. *Id*. In one year, the

mastermind earns $3 million and the student earns $3,600. *Id*. If

joint and several liability applied, the Court observed, the

student would face a forfeiture judgment of proceeds of the

entire conspiracy—$3 million—"even though he never personally

acquired any proceeds beyond the $3,600." *Id*. at 1632. Turning

to the statute, the Court observed that sections 853(a)(1),[4]

(2),[5] and (3)[6] "by their terms, limit forfeiture under § 853 to

_____

[3] In resolving this disagreement, the Court agreed with the
decision of the Court of Appeals for the District of Columbia
Circuit in *United States v. Cano-Flores*, in which the court
vacated a forfeiture order based on a joint and several
calculation. 796 F.3d 83, 95 (D.C. Cir. 2015).
[4] Section 853(a)(1) limits forfeiture to "property constituting,
or derived from, any proceeds the person obtained, directly or
indirectly, as the result of" of the crime.
[5] Section 853(a)(2) restricts forfeiture to "property used, or
intended to be used, in any manner or part, to commit, or to
facilitate the commission of" the crime.
[6] Section 853(a)(3) applies to persons "convicted of engaging in
a continuing criminal enterprise"—a form of conspiracy—and
requires forfeiture of "property described in paragraph (1) or

tainted property." *Id*. at 1632. Returning to the example, the

Court noted that if the college student

> were held jointly and severally liable for the
> proceeds of the entire conspiracy, he would
> owe the government $3 million. Of the $3
> million, $2,996,400 would have no connection
> whatsoever to the student's participation in
> the crime and would have to be paid from the
> student's untainted assets. Joint and several
> liability would thus represent a departure
> from § 853(a)'s restriction of forfeiture to
> tainted property.

*Id.* at 1632.

The Court then observed that the statute "defines

forfeitable property solely in terms of personal possession or

use" because the meaning of "obtain" is "to come into possession

of" or to "get or acquire." *Id*. at 1632. The Court found that

other provisions of the statute, as well as the legislative

history, supported its conclusion. *Id*. at 1633. The Court

concluded that "[f]orfeiture pursuant to § 853(a)(1) is limited

to property the defendant himself actually acquired as the

*result* of the crime." *Id*. at 1635 (emphasis added). Thus,

"obtain" in 21 U.S.C. § 853(a)(1) means "actually acquire," and

only tainted property that is "actually acquired" is subject to

forfeiture. *Id*. at 1632, 1635.

---

(2)" as well as "any of [the defendant's] interest in, claims
against, and property or contractual rights affording a source
of control over, the continuing criminal enterprise."

Here, there is no dispute that Mr. Cooper received $46,432 in "buy money" from his co-conspirator, Mr. Jackson. The government's position is that since Mr. Cooper received this amount from Mr. Jackson, the statute has been satisfied, and what happened to the $46,432 after Mr. Cooper received it is irrelevant. Hr'g Tr. at 8:19-21. However, pursuant to *Honeycutt*, what happened to the "buy money" after Mr. Cooper received it is highly relevant, given that the government must prove by a preponderance of the evidence that Mr. Cooper "actually acquired" the full amount of the "buy money," as section 853(a) does not allow untainted assets to be forfeited. *See Honeycutt*, 137 S. Ct. at 1632-33. The government has not met this burden because the evidence shows that, with one exception,[7] Mr. Jackson gave the money to Mr. Cooper, who used the money to purchase the drugs from his supplier that he then provided to Mr. Jackson. Specifically: (1) Mr. Jackson gave Mr. Cooper the "buy money" or Mr. Cooper fronted Mr. Jackson the heroin he was going to purchase from his supplier; (2) Mr. Cooper used the "buy money" to obtain heroin from his supplier; and (3) Mr. Cooper delivered the heroin to Mr. Jackson after purchasing it from his supplier.

---

[7] The exception is the May 5-6, 2015 activations in which Mr. Cooper fronted Mr. Jackson the heroin he was going to purchase from his supplier rather than receiving all the "buy money" from Mr. Jackson first.

*See generally* Statement of Offense, ECF No. 174; Plea, ECF No.

175. The reasonable inference based on the factual scenario set

forth in the statement of offense, the pattern of calls, and Mr.

Cooper's behavior is that Mr. Cooper did not have the heroin in

his possession, but that he would get the "buy money" from Mr.

Jackson, provide that portion of the "buy money" minus his

commission to his supplier, and then deliver the heroin to Mr.

Jackson. Thus, if the Court were to hold Mr. Cooper liable for

the entire $46,432, he would have to pay the portion that was

paid to his supplier from his own untainted assets,[8] which the

Supreme Court held to be a departure from the statute's

restriction that subjects only tainted property to forfeiture.

*See Honeycutt*, 137 S. Ct. at 1632. The Court recognizes that Mr.

Cooper's supplier has not been indicted, but making Mr. Cooper

liable for the entire amount of the "buy money" would mean

functionally subjecting him to joint and several liability. The

government essentially acknowledged this when, in the context of

a hypothetical question posed by the Court, the government

stated that if Mr. Cooper's supplier had been indicted, it would

---

[8] If the government wants to confiscate untainted property, it
must comply section 853(p) of the statute, which governs the
forfeiture of substitute assets. The government has provided no
evidence demonstrating that it is seeking forfeiture of
substitute assets.

seek forfeiture from the supplier in the amount that the

supplier received from Mr. Cooper, and that it would seek less

than the full amount of "buy money" from Mr. Cooper. Hr'g Tr.,

ECF No. 266 at 17:8-20:19; 22:21-24:1.

The government does not dispute that Mr. Cooper purchased

the heroin from an unindicted supplier, *id*. at 16:6-13, nor that

he negotiated the cost of the heroin with his supplier, Reply,

ECF No. 241 at 5, nor that he kept a commission for himself.

Hr'g Tr., ECF No. 266 at 17:19-22. However, the government

argues that there is no evidence showing that Mr. Cooper

actually used the "buy money" to purchase the heroin from his

supplier. Reply, ECF No. 241 at 4. The government suggests that

Mr. Cooper could have "stiffed" the supplier and kept the money,

or he could have been arrested before he was able to pay a

supplier. Hr'g Tr., ECF No. 266 at 24:20-25. However, there is

nothing in the record to support the government's suggestions

that Mr. Cooper "stiffed" his supplier or that he was arrested

before he paid his supplier and it would be sheer speculation

for the Court to accept these suggestions as evidence. *See*

*generally* Statement of Offense, ECF No. 174; Plea, ECF No. 175.

The government argues that *Honeycutt's* marijuana mastermind

illustration is inapplicable because here there is no college

student, no mastermind, and no contention that Mr. Cooper was a

courier. Hr'g Tr., ECF No. 266 at 15; Reply, ECF No. 241 at 5-6.
The Court recognizes the ways in which the situation here
differs from the illustrative example in *Honeycutt*. However, the
essential point the Supreme Court made in that example is that
making the student liable for the entire $3 million would
require the student to pay all but $3,600 of the forfeiture from
untainted funds. *See Honeycutt*, 137 S. Ct. at 1635. Here, there
is no dispute that Mr. Cooper received $46,432 in "buy money."
Furthermore, the reasonable inference from the evidence is that
some portion of it was used to purchase the heroin from Mr.
Cooper's supplier. Therefore, making Mr. Cooper liable for the
full amount of the "buy money" would mean that he would have to
pay some portion of it from his own untainted assets, which is
prohibited by the statute. *See Honeycutt*, 137 S. Ct. at 1632.

Finally, the government argues that applying the *Honeycutt*
Court's definition of the word "obtain" here amounts to a
"backdoor way into the net proceeds versus gross proceeds"
argument. Hr'g Tr., ECF No. 266 at 55:12-13. The Court
disagrees. In *Honeycutt,* the Supreme Court clearly and broadly
stated that "Section 853(a) limit[s] forfeiture to tainted
property acquired or used by the defendant." *Honeycutt*, 137 S.
Ct. at 1633. Therefore, the Court must determine whether the
government has met its burden of proving by a preponderance of

the evidence that the amount subject to forfeiture would be paid from tainted funds. The government has failed to do so because the reasonable inference from the factual proffer is that some portion of the tainted money was acquired by Mr. Cooper's supplier and holding Mr. Cooper liable for the entire amount would mean that he would have to pay that portion of it from his own untainted assets. If the government seeks to recover the rest of the tainted money, pursuant to *Honeycutt* it must seek it from Mr. Cooper's supplier.

Accordingly, the government's motion for final order of forfeiture is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**Signed: Emmet G. Sullivan**
**United States District Judge**
**December 13, 2018**